## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MINNESOTA LIFE INSURANCE CO.,**

        **Plaintiff,**

**-v-**                             **Case No.:  2:15-cv-2693**
                                          **JUDGE GEORGE C. SMITH**
                                          **Magistrate Judge Kemp**

**CORY BIRNEY,** *et al.***,**

        **Defendants.**

## OPINION AND ORDER

       This is an interpleader action wherein Plaintiff Minnesota Life Insurance Co. seeks a determination as to who is entitled to the life insurance proceeds from decedent, Richard Birney. Richard Birney's surviving spouse, Cory Birney, and his girlfriend Summer Fairman both assert that they are entitled to the life insurance policies at issue in this case and have both moved for summary judgment in their favor.  (*See* Docs. 35 and 40).  Also pending is Defendant Birney's Motion to Strike Defendant Fairman's Motion for Summary Judgment (Doc. 44)[1], as well as Plaintiff Minnesota Life Insurance Company's Motion for Attorney Fees and Costs (Doc. 52). These motions have been fully briefed and are now ripe for review.  For the reasons that follow, Defendant Cory Birney's Motion is **GRANTED IN PART AND DENIED IN PART** and Defendant Summer Fairman's Motion is **GRANTED IN PART AND DENIED IN PART**.

---

       [1] Defendant Fairman does not dispute that she filed her Motion for Summary Judgment outside the time limits set forth in the case schedule, however, she submits it was filed as a response to Birney's Motion for Summary Judgment.  Both parties agree that there are no genuine issues of material fact and therefore, if the Court does not grant Birney's Motion, Fairman thought it appropriate to submit her motion in the interest of judicial economy.

Plaintiff Minnesota Life's unopposed Motion for Attorney Fees and Costs is **GRANTED**. And

Defendant Birney's Motion to Strike is **DENIED**.

## I. BACKGROUND

The decedent, Richard Birney was employed as a plumber with The Ohio State

University and had three employer provided life insurance policies through Plaintiff, Minnesota

Life. The life insurance policies are:

1. Basic Life Insurance Policy with a death benefit of $117,260.00.
2. Accidental Death Policy with a death benefit of $117,260.00.
3. Voluntary Supplemental Life Insurance Policy with a death benefit of $375,232.00.

The first two basic life insurance policies were acquired by Richard Birney on December

5, 2011. He did not designate a beneficiary when he first acquired the policies. Richard Birney

applied for the supplemental policy on January 3, 2015 and named Summer Fairman as the

beneficiary.

### A. Family History

The decedent Richard Birney and Defendant Cory Birney were married on August 30,

1998. Mr. Birney adopted their oldest child, Thomas Birney (DOB 6/22/97), and then the couple

had four more children together: Abigail Birney (DOB 2/28/99); Zachary Birney (DOB 1/18/01);

Natalie Birney (DOB 9/2/03); and Phillip Birney (DOB 8/8/04). (Doc. 35-1, Cory Birney Aff. ¶

7).

In early 2012, Richard and Corey Birney separated and Richard moved in with his

girlfriend, Summer Fairman. Richard and Summer continued to live together until Mr. Birney's

death on February 14, 2015. During the separation, Mr. Birney continued to support his family,

paying the majority of the mortgage and utility bills on the family home. However, the Birney's

-2-

encountered financial troubles and Richard and Cory entered into a Chapter 13 Bankruptcy in 2013.

On September 9, 2013, Cory Birney filed for divorce against Richard Birney in the Licking County Domestic Relations Court (*see Birney v. Birney*, Case No. 13-DR-1010). (Doc. 35-1, Cory Birney Aff. ¶ 7). The same day the Domestic Court issued a Restraining Order that provided in pertinent part:

> (C)    Plaintiff and Defendant are hereby restrained from damaging, moving, selling, giving away, transferring, withdrawing, disposing of, or encumbering any interest which either party may have in real property, personal property, funds, accounts, business interests, investments, or any other asset, except for existing businesses in the ordinary course of business. The Plaintiff and Defendant are permitted to use a checking account for ordinary living expenses.
>
> *        *        *
>
> (G)    Plaintiff and Defendant are hereby restrained from terminating, modifying, or changing the beneficiaries on any policy of life, health, automobile, or other insurance which covers a party or a minor child of the parties.

(Doc. 35-1, Restraining Order at 7).

In addition to the divorce proceedings, there were numerous custody hearings and Cory Birney continued to care for the children until there was an accusation that Cory slapped her son Zachary. As a result of this, Children's Services suggested that the children be placed with their father, Richard. Before the final adjudication of both the juvenile and divorce proceedings, Richard Birney was killed in a car accident on February 14, 2015. Mr. Birney was hit by a drunk driver who went left of center at a high rate of speed and hit him head on. The other driver's blood alcohol was found to be almost three times the legal limit.

During her separation from Mr. Birney, Mrs. Birney began a relationship with Keith Nutter and she had a child with him, Michael Nutter (DOB 2/26/13). There are also a number of

other statements included in the parties' briefs regarding the care of the children, Summer

Fairman's new relationship, the funds Summer Fairman received upon Richard's death and other

possessions and assets she retained from his estate.  However, the Court has not included those

details are they are not relevant to the legal determination as to who is entitled to the life

insurance proceeds.

**B.    Life Insurance Policies**

The details of each of the life insurance policies at issue in this case are as follows:

(1)    A basic Life Insurance policy ("basic life policy") that provided for a death benefit of

$117,260.00.  This policy was obtained by Richard Birney on December 5, 2011.  He did not

name a specific beneficiary at that time.  However, Minnesota Life's policy was that the

surviving spouse would be the beneficiary where no beneficiary is designated.

(2)    An accidental death policy ("accidental death policy") with a death benefit of

$117,260.00.  This policy was also obtained by Richard Birney on December 5, 2011, and again

no beneficiary was designated at that time.  There is no dispute that because Richard Birney died

as a result of an automobile accident, his death qualifies as an accidental death under this policy.

Although Richard Birney did not initially name a beneficiary to the aforementioned two

policies, on November 20, 2014, he named Summer Fairman as the beneficiary of these two

policies.

(3)    A voluntary supplemental life insurance policy with a death benefit of $375,232.00, that

was taken out by Richard Birney shortly before he died.  Birney applied for the supplemental

policy on January 3, 2015.  He designated Summer Fairman as the primary beneficiary, and

designated Thomas Birney and the minor children as contingent beneficiaries.  (Doc. 1, Compl. ¶

21).  This policy was not due to begin coverage until a date after Birney's death, but Minnesota Life has determined that it will honor the policy.

Together, the aforementioned life insurance policies provide for a total death benefit of $609,752.00.

## C.    Procedural History

This case was initiated on August 5, 2015.  Minnesota Life has named all potential interested parties as Defendants in this case.  Defendants Cory Birney and Summer Fairman are both seeking the entirety of the life insurance proceeds of Richard Birney and have moved for summary judgment in their favor.  Minnesota Life has deposited a sum of $651,350.64 with the Court, the total of all the life insurance proceeds ($609,752.00), plus accrued interest from the date Minnesota Life received proof of claim.  (*See* Doc. 51).  On August 12, 2016, Plaintiff Minnesota Life was terminated as a party to this case.  The Court ordered that the insurance proceeds be deposited in an interest-bearing account.  (*See Id.*).

In addition to the family members of Richard Birney and his girlfriend, American Funeral Financial, LLC ("AFF") has been named as a Defendant because they provided the financing for Richard Birney's funeral expenses at the Kauber-Sammons Funeral Home.  (*See* Ex. A attached to Doc. 26, AFF's Answer).  Summer Fairman made the funeral and burial arrangements, which cost $20,793.71.  To obtain financing with AFF, Fairman assigned that amount from the purported life insurance proceeds she would receive.  Upon Birney's death, AFF made a claim to Minnesota Life for their assigned portion of the life insurance proceeds.  AFF has filed cross-claims against all the Defendants.  Specifically, AFF filed a breach of contract cross-claim against Defendant Summer Fairman, for $20,793.71, the cost of the funeral

expenses, plus interest.  Alternatively, AFF has also filed an unjust enrichment cross-claim against all the other Defendants, asserting that the Defendants have been unjustly enriched by receiving the benefit of decedent's funeral and burial services.[2]

Summer Fairman falsely reported on Richard Birney's death certificate that he was "Divorced and Unremarried."  (Ex. D to Doc. 35 at A-8, death certificate).  Cory Birney was able to have a corrected death certificate prepared at the health department that included her as the surviving spouse.

## II.    STANDARD OF REVIEW

Defendants Cory Birney and Defendant Summer Fairman have both moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment.  *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of

---

[2] Notably, Summer Fairman forbid Cory Birney from attending the funeral and even threatened that she would be arrested for trespass if she attempted to attend.  Therefore, Cory Birney did not attend her husband's funeral.  (Doc. 35, Birney Mot. for Summ. J. at 11).

"'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").  In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party."  *Id.*

That the parties have filed cross-motions for summary judgment does not alter the Court's standard of review.  *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions.").  Thus, in reviewing cross-motions for summary judgment, the Court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party."  *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III.  DISCUSSION

Both Cory Birney and Summer Fairman assert multiple arguments in support of their claim to the proceeds of Richard Birney's three life insurance policies at issue in this case. There is no dispute that the decedent Richard Birney was killed in a car accident and Minnesota Life has agree to pay on all three policies.  Plaintiff Minnesota Life deposited the funds of the

three life insurance policies at issue in this case with the Court.  (*See* Doc. 53, Notice).

Therefore, the Court must now determine who is the legal beneficiary of the life insurance

policies. The Court will address the arguments of both Birney and Fairman in turn.

As a preliminary matter, the Court denies Defendant Cory Birney's Motion to Strike

Defendant Summer Fairman's Motion for Summary Judgment.  There is no dispute that the

dispositive motion deadline was April 30, 2016, and Fairman's Motion for Summary Judgment

was not filed until May 23, 2016.  However, the Court finds that the parties agree that this matter

is purely legal in nature, there are no factual issues in dispute, and there was no prejudice to

Defendant Birney as her motion was not even ripe before the filing of Defendant Fairman's

motion.  Therefore, in the interest of judicial economy, this matter should be resolved on the

summary judgment motions and the Court will consider both motions.

A.      **Life Insurance Policy Language**

Defendant Cory Birney argues that under the plain language of the life insurance policies,

all of the proceeds should be paid to her as Richard Birney's surviving spouse.

The life insurance policies set forth "**To whom will we pay the death benefit?**":

> We will pay the death benefit to the beneficiary or beneficiaries.  A
> beneficiary is named by an insured to receive the death benefit to be paid at the
> insured's death.  The insured may name one or more beneficiaries.  The insured
> cannot name you or an associated company as a beneficiary.
>
> The insured may also choose to name a beneficiary that the insured cannot
> change without the beneficiary's consent.  This is called an irrevocable
> beneficiary.
>
> If there is more than one beneficiary, each will receive an equal share,
> unless the insured has requested another method in writing.  To receive the death
> benefit, a beneficiary must be living on the date of the insured's death.

*      *      *

-8-

If there is no eligible beneficiary, or if the insured does not name one, we will pay the death benefit to:

> (1) the insured's lawful spouse (does not include a domestic partner), if living, otherwise;
> (2) the insured's natural or legally adopted child (children) in equal shares, if living, otherwise;
> (3) the insured's parents in equal shares, if living, otherwise;
> (4) the insured's siblings in equal shares, if living, otherwise;
> (5) the personal representative of the insured's estate.

(Doc. 1, Ex. A, p. 19).

Defendant Cory Birney argues that "[O]ne must assume that a spouse must be a 'irrevocable beneficiary' since the policy speaks of this type of beneficiary and then mentions that the spouse will be the beneficiary if one is not named."  (Doc. 35, Birney Mot. for Summ. J. at 28).  However, the policy language does not define irrevocable beneficiary to include spouse. The policy allows for the insured to choose an irrevocable beneficiary, but there is no evidence that Richard Birney did so with respect to any of his life insurance policies.  Richard Birney did not name a beneficiary at the time he applied for the first two policies, and later, on November 20, 2014, made Summer Fairman the beneficiary under the first two policies.  Further, when he applied for the supplemental policy on January 3, 2015, he named Summer Fairman as the beneficiary.

Therefore, Summer Fairman is the designated beneficiary under all of the life insurance policies.  Generally, "an insured . . . has the right to select a beneficiary of his choice."  *Bartlett v. SunAmerica Life Ins. Co.*, 2010-Ohio-1884, No. L.-09-1124, ¶ 16 (6th App. Dist. 2010) (finding domestic relations court restraining order voided beneficiary designations).  However, all of the changes to the policies, including naming Summer Fairman as the beneficiary on the first two policies and adding the supplemental policy, occurred while Richard Birney was subject

to the September 9, 2013 domestic relations restraining order. Therefore, the Court must consider the effect of the restraining order on the determination of who receives the proceeds of the life insurance policies.

**B.** **Divorce Proceeding**

As set forth above, the Birneys were proceeding with a divorce in the Licking County Domestic Relations Court (*see Birney v. Birney*, Case No. 13-DR-1010). (Doc. 35-1, Cory Birney Aff. ¶ 7). On September 9, 2013, in that case, the Domestic Relations Court issued a Restraining Order that provided in pertinent part:

> (C)     Plaintiff and Defendant are hereby restrained from damaging, moving, selling, giving away, transferring, withdrawing, disposing of, or encumbering any interest which either party may have in real property, personal property, funds, accounts, business interests, investments, or any other asset, except for existing businesses in the ordinary course of business. The Plaintiff and Defendant are permitted to use a checking account for ordinary living expenses.

> *        *        *

> (G)     Plaintiff and Defendant are hereby restrained from terminating, modifying, or changing the beneficiaries on any policy of life, health, automobile, or other insurance which covers a party or a minor child of the parties.

(Doc. 35-1, Restraining Order at 7).

The dispute between Cory Birney and Summer Fairman centers on the issue of the status of the divorce proceedings upon the death of one party. Fairman argues that if a party to a divorce action dies before the assets have been distributed or the final decree entered, the action abates and the trial court loses jurisdiction. (Doc. 40, Fairman Mot. for Summ. J. at 6, citing *State ex rel. Litty v. Leskovyansky*, 77 Ohio St. 3d 97 (1996)). Birney counters that the life insurance is considered held in a constructive trust and must be paid to the surviving spouse under these circumstances. (Doc. 35, Birney Mot. for Summ. J. at 14, citing *Conception v.*

-10-

*Conception*, 131 Ohio App. 3d 271, 722 N.E.2d 176 (3rd App. Dist. 1999)).

### 1. Divorce Proceeding Abated

Summer Fairman acknowledges that there was a restraining order in place preventing Richard Birney from modifying or changing beneficiaries to his life insurance policy since the outset of his divorce proceedings, and that Richard Birney violated that restraining order by designating her as the beneficiary of his life insurance policies. However, she counters that if he was found to have done so while still alive, he would have been subject to contempt proceedings in domestic court, to which he could have provided a defense. However, because of his untimely death, he should not be forbidden from designating the beneficiary of his choice.

Fairman, relying on *State ex rel. Litty* and *Hook v. Hook*, 35 Ohio App. 3d 51, 519 N.E.2d 687 (8th App. Dist. 1987), argues that since there was no final disposition in the Birneys' divorce proceedings, the action abates and the temporary restraining order is extinguished. (Doc. 40, Fairman Mot. for Summ. J. at 6). The *Litty* court held that when one of the parties to a divorce proceeding dies before the final disposition, the action abates and the trial court lacks further jurisdiction. 77 Ohio St. 3d at 99. Fairman then asserts that "it stands to reason that any temporary restraining orders are extinguished as well." (Doc. 40, Fairman Mot. for Summ. J. at 6, citing *Hook*). While technically the temporary restraining would no longer be in effect going forward, Richard Birney was still subject to that order prior to his death.

Ohio courts have held that "[a]n attempt to change the named beneficiary under a life insurance policy cannot be held to defeat the original beneficiary's interest upon the insured's death, when, at the time of the attempted change, a temporary restraining order prevented the insured from affecting in any manner the interests in his assets, and that judicial prohibition

-11-

remained in effect at the time of the insured's death."  *Mack v. Allstate Life Ins. Co.*, 42 Ohio

App. 3d 101, at syllabus (1987).  The *Mack* court ultimately held that "George Mack's attempt to

change the beneficiary of the policy on his life was not effective because his right or authority to

make any change was inhibited by the TRO, and that the trial court did not err in awarding the

proceeds to Constance Mack, the original beneficiary.  *Id.*  The *Mack* court reasoned that it

would not allow "the insured's clearly expressed intent to prevail over a valid court order."  *Id.*

Defendant Birney, however, argues that Ohio law provides that a change to the life

insurance beneficiary while subject to a restraining order is invalid and void, relying on

*Concepcion*, 131 Ohio App. 3d 271.  The *Concepcion* court discussed:

> It is fairly well-settled that the death of a party prior to adjudication of the issues
> in a pending divorce case causes the action to abate and ends any jurisdiction that
> a judge has over the case except to dismiss it.  *See State ex rel. Litty v.
> Leskovyansky* (1996), 77 Ohio St. 3d 97, 671 N.E.2d 236.  The Supreme Court of
> Ohio in *Coffman v. Finney*, (1901) 65 Ohio St. 61, 61 N.E. 155 held that an action
> termed "personal," such as for divorce or for determination and order of an
> alimony award, generally abates upon the death of one party to the action.
> However, an action which seeks to enforce fixed rights and liabilities, such as an
> action to enforce alimony already awarded, may survive the death of that party.
> *Id.*  Thus, the test set forth by the Court in *Coffman*, *supra*, in determining
> whether or not an action abates upon the death of a party is whether or not the
> action seeks to enforce fixed rights and liabilities.  *See, also, Diemer v. Diemer*
> (1994), 99 Ohio App. 3d 54, 649 N.E.2d 1285.

*Concepcion*, 131 Ohio App. 3d at 276.  The *Concepcion* court discussed the *Hook* case, relied on

by Fairman here, but dismissed it, and instead held that:

> Although an insured generally has the right to select a beneficiary of his choice,
> the purpose of the temporary restraining order was to maintain the status quo, thus
> preserving the rights and liabilities of the respective parties pending adjudication
> of the merits of the case.  The effect of the trial court's temporary restraining
> order was to preserve the action, an issue wholly separate and apart from the issue
> of jurisdiction.  *See Deimer*, 99 Ohio App. 3d at 60.

-12-

*Concepcion*, 131 Ohio App. 3d at 277.  The Court ultimately concluded that the decedent disregarded a court order that precluded him from changing the beneficiary of his life insurance policy.  Further, the court found that the newly designated beneficiary was unjustly enriched at the original beneficiary's expense giving rise for the imposition of a constructive trust.  *Id.*

The Court of Appeals for the Sixth Circuit considered this issue in *Candler v. Donaldson*, 272 F.2d 374 (6th Cir. 1959).  In *Candler*, the insured died during a pending divorce proceeding that had a similar temporary restraining order in effect barring the insured from disposing in any manner the properties or assets of either or both of the parties.  Disregarding the restraining order, the insured changed the beneficiary of his life insurance policy from his wife to his mother.  The *Candler* Court held that "although the right of a husband under such circumstances to change the beneficiary from his wife to another is well established, where the right to change the beneficiary is reserved by the policy, it is also well established that under certain circumstances equities may arise in favor of the named beneficiary which would deny to the insured the right to make such a change." *Id.* at 376–377.  Further, the purpose of the restraining order was preservation of the status quo during the pendency of the divorce action until a final adjudication of the parties' property rights could be made.  *Concepcion*, 131 Ohio App.3d at 278 (citing *Candler*, 272 F.2d at 377).  Therefore, following the reasoning in *Candler*, *Mack*, and *Concepcion*, the Court finds that the decedent Richard Birney was subject to a valid restraining order at the time he changed the beneficiary of his existing life insurance policies and purchased a new supplemental life insurance policy.  Therefore, Summer Fairman would be unjustly enriched at the expense of Cory Birney and their five children.  Accordingly, the Court will consider the application of a constructive trust in this case.

-13-

Fairman also argues that the Birneys were *de facto* divorced with a separation date of September 9, 2013. There is no dispute that the parties had been separated prior to filing for divorce and were living with other people, not acting as a married couple. However, there were options available to the Birneys under Ohio law to establish terms and conditions of their separation while the divorce proceedings were pending, such as a legal separation, or an agreed order setting a termination date of the marriage, or filing a motion for a termination date. Richard Birney was represented by counsel in the divorce proceedings and could have exercised his right to one of the aforementioned options, but he did not do so. The Court does not find that the parties were *de facto* divorced and concludes that there was no termination date of the Birneys' marriage prior to Richard's death. Therefore, at the time of Richard's death, all the life insurance polices, and proceeds thereof, are considered marital property. *See* Ohio Rev. Code § 3105.171(A)(2)–(3) (defining during the marriage and marital property).

## 2.    Constructive Trust

Cory Birney argues that Richard Birney violated the domestic relations court restraining order when he changed the beneficiary of his basic and accidental life insurance policies, as well as when he purchased the supplemental life insurance policy, thereby unjustly enriching his girlfriend Summer Fairman, to the detriment of his wife and children because all the policies were marital property.

A constructive trust is an equitable remedy that arises by operation of law against one who holds legal title to property where equity and good conscience demands that he should not. *Hill v. Hill*, 2002 Ohio 685, 2002 Ohio App. LEXIS 725 (10th App. Dist. Feb. 21, 2002). A constructive trust is an appropriate remedy against unjust enrichment, and, although usually

-14-

invoked when property has been acquired by fraud, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a person even though the property was acquired without fraud. *Ferguson v. Owens*, 9 Ohio St.3d 223, 226, 2005-Ohi-3815 (1984). Where a person holds title to property against equity and good conscience and will be unjustly enriched by retaining title, Ohio courts have not required, as a prerequisite for a constructive trust, that the holder obtained title by fraudulent or questionable means. *See Groza-Vance v. Vance*, 162 Ohio App.3d 510, 834 N.E.2d 15 (2005).

As set forth above, and as argued by Cory Birney, this is exactly the situation a constructive trust was designed to protect against. Had the domestic relations case been finalized, that court would most likely have ordered spousal and child support, as well as a final decision on the life insurance policies (including the supplemental life insurance policy) because they were marital assets, acquired while the Birneys were married. *See generally Apt v. Apt*, 2nd Dist. Montgomery, No. 25410, 2013-Ohio-619 (2nd App. Dist. 2013) ("In the spousal-support context, life insurance is often used to secure payments.").[3] In fact, Ohio courts have even ordered the husband to maintain the wife as beneficiary of his life insurance policies even after the couple are divorced. *See Waites v. Waites*, 5th Dist. Fairfield, No. 15-CA-1, 2015-Ohio-2916 (5th App. Dist. 2015). Therefore, the Court finds that if all of the life insurance proceeds were to be distributed to the beneficiary, Summer Fairman, she would be unjustly enriched to the detriment of Richard Birney's family.

---

[3] Ohio courts consider all relevant factors in making determinations as to support and division of marital property, including the duration of the marriage, assets and liability of the spouses, liquidity of the property to be distributed, retirement benefits, including social security, etc. *See* Ohio Rev. Code § 3105.171.

However, there is no doubt that Richard Birney also wanted to provide for his girlfriend/fiancee Summer Fairman, as evidenced by adding her as the beneficiary of his life insurance policies and purchasing a supplemental policy, naming her as the beneficiary.  Further, since the domestic relations court most likely would not have awarded the entire amount of the life insurance policies to Cory Birney and her children, some of the life insurance proceeds should be awarded to Summer Fairman.

This Court has been tasked with determining who is entitled to the life insurance proceeds of the decedent, Richard Birney, totaling $609,752.00.  The Court has discretion to impose a constructive trust having found that if the entire amount of the proceeds were paid to the beneficiary, Summer Fairman, she would be unjustly enriched to the detriment of Richard Birney's five children.  Presumably, when Richard Birney took out those life insurance policies, he intended to provide for his family upon his death.  The equities in this case therefore require the imposition of a constructive trust.  The domestic court would not have permitted Richard Birney to walk away from his family obligations and not provide for them financially.  Therefore, this Court will not either.  For the foregoing reasons, the total amount of the life insurance proceeds, $609,752.00 plus accrued interest, less the attorney fees sought by Plaintiff's counsel, shall be held in a constructive trust and disbursed as set forth below.  But again, as equity so requires, a portion of the proceeds will be awarded to Summer Fairman to carry out the intent of the decedent Richard Birney.

## C.    Minnesota Life's Motion for Attorney Fees

Plaintiff Minnesota Life filed a motion for attorney fees and costs incurred in this action. The total attorney fees and costs sought is $11,419.45, incurred through October 3, 2016, plus

-16-

any reasonable fees and costs thereafter before their dismissal from this case.

This Court has discretion to award attorney fees to a disinterested stakeholder in an interpleader action. *See Holmes v. Artists Rights Enforcement Corp.*, 148 F. App'x 252, 259 (6th Cir. 2005); *see also Mutual Life Ins. Co. of New York v. Bondurant*, 27 F.2d 464, 465–66 (6th Cir. 1928) (holding that a disinterested stakeholder who brings an interpleader action is entitled to reasonable attorneys' fees and costs).

The Court finds that Minnesota Life is a disinterested stakeholder in this interpleader action and that despite attempting to resolve this matter, were unable to do so and were forced to file this interpleader action. Minnesota Life's Motion has not been challenged by any of the Defendants. The only response was from Defendant AFF who asserted that any fees and costs awarded should be paid from the interpleaded funds.

Therefore, the Court finds that the amount of attorney fees and costs sought by Minnesota Life is reasonable and are hereby awarded a total of $11,419.45, fees and costs incurred through October 3, 2016, plus any additional fees and costs incurred through the depositing of proceeds of the life insurance policies with the Court on November 17, 2016.

### D.   American Funeral Financial's Cross-Claims

Having resolved the pending cross-motions for summary judgment seeking the proceeds Richard Birney's life insurance policies, the only remaining issue in this case is AFF's cross-claims against Summer Fairman and the other Defendants for the funeral expenses of the decedent, Richard Birney, totalling $20,793.71. Like Fairman and Birney, Defendant AFF could

have moved for summary judgment on their claim for the life insurance proceeds but failed to do so. The Court could decline to exercise supplemental jurisdiction over AFF's cross-claims, however, that defeats the purpose of interpleader. *See* 28 U.S.C. § 1336.

Federal Rule of Civil Procedure 56(f) gives the Court discretion to enter summary judgment *sua sponte* for a nonmovant after giving the party notice and a reasonable opportunity to respond. The Court hereby gives notice all remaining parties that the Court will grant summary judgment to AFF on their breach of contract cross-claim against Defendant Summer Fairman for the contractually agreed upon amount of $20,793.71. If any party wishes to dispute this, they may file a response and show cause why the Court should not find that Defendant Summer Fairman contracted with AFF to pay a total of $20,793.71. Any arguments as to whether Fairman had the authority to assign any proceeds of the life insurance policies are moot as the Court has already awarded her a portion of the life insurance policies to Fairman based on Richard Birney's intent to provide for her. Any response must be filed within fourteen (14) days of this Order. Failure to respond will result in the granting of summary judgment to AFF against Summer Fairman for the amount of $20,793.71.

**E.**      **Distribution of Life Insurance Proceeds**

As set forth above, the total amount of proceeds in addition to interest accrued that has been deposited with the Court to be placed in an interest-bearing account was $651,350.64.  The Clerk of this Court shall pay a total of $11,419.45, plus any additional fees and costs submitted by Minnesota Life to the Clerk within ten days of the date of this Order.

A total of $100,000, shall be awarded to Defendant Summer Fairman, less the amount of the contract for the financing of Richard Birney's funeral expenses with AFF, $20,793.71.

The remainder of the interpleaded funds, approximately $539,931.19, plus interest accrued since deposited with the Court, shall be awarded to Defendant Cory Birney and the children of Cory and Richard Birney.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Cory Birney's Motion is **GRANTED IN PART AND DENIED IN PART** and Defendant Summer Fairman's Motion is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff Minnesota Life's unopposed Motion for Attorney Fees and Costs is **GRANTED**.  Defendant Birney's Motion to Strike is **DENIED**.  The Court will sua sponte **GRANT** summary judgment to AFF after fourteen days of the date of this Order unless an opposition is filed, then the Court will consider further briefing on the issue.

The Clerk is instructed to remove Document 35, 40, 44, and 52 from the Court's pending motions list.

Upon final resolution of the AFF summary judgment matter, the Court will instruct the Clerk to disburse the funds and close this case.

**IT IS SO ORDERED.**

 */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**